# COLECCIÓN DE LAS

# SENTENCIAS Y RESOLUCIONES

### DICTADAS POR EL

# TRIBUNAL SUPREMO DE PUERTO RICO.

---

### EL BANCO TERRITORIAL Y AGRÍCOLA

### *v.*

### LOS TENEDORES DE CÉDULAS HIPOTECARIAS.

### APELACIÓN procedente de la Corte de Distrito de

### San Juan.

No. 42.   Resuelto en Junio 17, 1905.

ACCIÓN.—PERSONALIDAD DE LAS PARTES.—El hecho de que el demandante entregue una copia de la demanda á una parte que, como demandada, se hubiere personado en el juicio, no envuelve un reconocimiento por parte de aquél, de la personalidad del último, la que puede impugnar, si no la hubiere justificado debidamente.

ID.—Entablada una demanda contra los *tenedores de cédulas hipotecarias de determinada emisión* de un Banco de crédito territorial, es indispensable acreditar el carácter de tenedor de cédulas *de tal emisión,* para tener personalidad como demandado en dicho pleito.

BANCOS DE CRÉDITO TERRITORIAL.—CÉDULAS HIPOTECARIAS.—CRÉDITOS PREFERENTES.—Las cédulas hipotecarias al portador, emitidas por un Banco de crédito territorial, tienen, como garantía, por ministerio de la ley, los créditos y préstamos á favor del Banco, los que quedan especial y singularmente afectos al pago de aquéllas, gozando de preferencia sobre todo otro acreedor ú obligación, estando, además, garantizadas en general, y con preferencia también, sobre los créditos resultantes de las demás operaciones, con el Capital del Banco.

ID.—TENEDORES DE CÉDULAS HIPOTECARIAS.—Los tenedores de cédulas hipotecarias de los Bancos de crédito territorial, son acreedores preferentes del Banco, con derecho á proceder contra todos los créditos que el Banco tenga, ó contra cualquiera de ellos, en caso de que sus reclamaciones no fueren satisfechas, pudiendo para ello, recurrir á la vía judicial, si fuere necesario.

ID.—GARANTÍA DE SUB-HIPOTECA EN FAVOR DE DETERMINADOS TENEDORES.—El hecho de que un Banco de crédito territorial haga una emisión de cédulas hipotecarias, y sub-hipoteque, especial y señaladamente, en favor de los tenedores

de las mismas, ciertos créditos hipotecarios del mismo Banco, no tiene el efecto de sustraer una masa social de los créditos á la garantía general que todos ellos prestan en favor de todas las cédulas hipotecarias emitidas, ni implica que los tenedores de la referida emisión tengan derechos prefentes á los de cualquiera otra emisión, y bajo este concepto no es nula la sub-hipoteca, por más que resultaría ineficaz si tal fin se propusiera.

ID.—DEUDORES HIPOTECARIOS.—Los tenedores de cédulas hipotecarias son acreedores del Banco que las hubiere emitido, y los deudores hipotecarios no están obligados directamente á ellos, y el hecho de que el Banco constituya sub-hipoteca, especial y señaladamente en favor de los tenedores de determinada emisión, no perjudica en modo alguno las operaciones que estén autorizadas con arreglo á ley, ya en la extinción de las hipotecas, ó por lo que respecte al pago de las cédulas.

Los hechos están expresados en la Opinión.

Abogado del apelante: *Sr. Juan Guzmán Benítez.*

Abogado de los apelados: *Sr. López Landrón.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del Tribunal.

Seguido pleito ante la Corte de Distrito de San Juan por el Banco Territorial y Agrícola contra los tenedores de cédulas hipotecarias de la primera á quinta emisión sobre nulidad y cancelación de sub-hipotecas después de llenar los trámites legales, dicha Corte dictó sentencia que con los votos emitidos por dos de sus Jueces, ó sea los Señores Tous Soto y Richmond, se transcribe á continuación:

"En la Ciudad de San Juan de Puerto Rico, á los dos días del mes de Mayo de mil novecientos cuatro, vistos en juicio oral y público los presentes autos declarativos sobre nulidad de hipotecas y otros pronunciamientos, seguidos entre parte; de la una, como demandante el Banco Territorial y Agrícola de Puerto Rico, representado por el abogado Don Juan de Guzmán Benítez, y de la otra, como demandados, los tenedores de cédulas hipotecarias emitidas por dicho Banco, declarados en rebeldía, con excepción de Don Julián E. Blanco y Sosa, mayor de edad, casado, propietario y vecino de esta Ciudad, y en su nombre y por el órden que se enumeran los Letrados D. Angel García Veve, Don Eduardo Acuña y Aybar y Don Rafael López Landrón.

1.—*Resultando*: que el Banco Territorial y Agrícola en veinte y seis de Marzo de mil ochocientos noventa y cinco compareció ante

el Notario Don José A. de la Torre, relacionando que Don Pío Martínez y Rivas y Don Guillermo Cortada formalizaron obligación hipotecaria á favor de dicho Banco, que menciona las cantidades que refiere, amortizables en quince años, obligándose á satisfacerlas al Banco en treinta plazos semestrales; que por otra escritura, Don Santiago Sambolín y Montalvo formalizó otra obligación hipotecaria amortizable en veinte y cinco años, pagaderos al Banco en la misma forma; y por otra, Don Emilio Gómez Martínez, amortizable en diez años en idéntica forma; que en representación el Director del Banco de los mencionados préstamos hipotecarios y en uso de las facultades que el Código de Comercio y sus estatutos le conceden, por acuerdo del Consejo de Administración del Banco ha determinado efectuar la segunda emisión de cédulas hipotecarias al portador por la cantidad que expresa, formalizando la presente escritura de obligación hipotecaria, siendo de una sola serie de 2400 cédulas amortizables por sorteos anuales en 20 años, verificándose al terminar cada anualidad, invirtiéndose todas las cantidades que durante el año perciba el Banco en pago de los préstamos hipotecarios mencionados, obligándose el Banco á satisfacer el importe de las cédulas á sus tenedores dentro de treinta días después del sorteo; que en el evento de que se anticipe por sus deudores el pago total ó parcial de los préstamos hipotecarios descritos al principio, se constituye á recoger ó inutilizar, satisfaciendo su importe, el número de cédulas equivalentes al montante de esos pagos anticipados; que aún cuando en garantía del pago de las cédulas, quedan por ley obligados con preferencia á sus demás responsabilidades el capital del Banco y todos sus demás bienes, créditos y pertenencias, para mayor seguridad de la hipoteca, al pago de las cinco hipotecas al principio descritas que vuelve á detallar, haciendo constar que todas esas hipotecas han sido apreciadas en su íntegro valor, y que la subsistencia de esta seguridad hipoteca, *queda pendiente* de la resolución de las primeras, sobre las cuales ha sido aquélla constituída, firmando la escritura el Director del Banco, los dos testigos instrumentales y el Notario autorizante; constando inscrita en el Registro de la Propiedad de San Germán, respecto á las fincas correspondientes al Distrito, suspendida en Mayagüez fé respecto á la radicada en Las Marías é inscrito el documento en el de esta Capital en cuanto á la segunda emisión de cédulas hipotecarias al portador que comprende.

2.—*Resultando*: que el mencionado Banco por otra escritura de

25 de Noviembre de 1895, ante el Notario D. José Agustín de la To-
rre, mencionando otras escrituras hipotecarias, hizo otra emisión
de cédulas hipotecarias al portador, que fué la tercera en la misma
forma y condiciones que la anterior, autorizándola solamente el
director del Banco, los dos testigos instrumentales y el Notario au-
torizante, y conteniendo la cláusula octava que la existencia de las
sub-hipotecas establecidas en este otorgamiento queda pendiente de
la solución de las respectivas hipotecas sobre que han sido constituí-
das, é inscrito el documento en los respectivos distritos de Humacao,
San Juan y San Germán.

3.—_Resultando_ : que formuló el Banco demandado acompañando
dichos documentos, solicitando se declaren nulas las escrituras de
12 de Enero y 25 de Noviembre de 1896, ante el Notario Don José
A. de la Torre, y la de 1 de Septiembre de 1896, ante D. Mauricio
Guerra, porque en ellas se constituyen sub-hipotecas á favor de los te-
nedores de cédulas hipotecarias, del Banco de la primera, segunda,
tercera, cuarta y quinta emisión, sobre los créditos hipotecarios res-
pectivos que se enumeran en la demanda, por la razón de que siendo
dichas hipotecas propiedad de los respectivos tenedores de cédulas,
no pueden sub-hipotecarse á favor de ellos mismos; que son nulas
asímismo las inscripciones de dichas sub-hipotecas, que se hicieron
y constan en las mismas escrituras; que se decrete la cancelación
de las que estén vigentes al ejecutarse la sentencia, á cuyo fin se
dirijan los mandamientos á los respectivos Registradores de la Pro-
piedad, y si alguno se opusiere á la demanda, sea condenado en cos-
tas; deduciendo la demanda contra los tenedores de cédulas de las
cinco primeras emisiones que por ser desconocidas las personas con-
tra quienes se dirije la demanda sean citadas por edictos.

4.—_Resultando_ : que los hechos de la demanda son: la constitu-
ción de la Sociedad Anónima Banco Territorial y Agrícola de Puer-
to Rico, su objeto principal, fomento de la agricultura con présta-
mos hipotecarios á largos plazos, evolucionando sus recursos en
forma de cédulas hipotecarias, haciendo la emisiones en representa-
ción de varias hipotecas á largos plazos, constituyendo en las cinco
escrituras de emisión varias sub-hipotecas sobre los mismos présta-
mos, en cuya representación omitía cédulas, á favor de estos mismos
valores, inscribiéndose las sub-hipotecas; pero debiendo inscribirse
la escritura de la quinta emisión en el Registro de Ponce, se de-
negó la inscripción de las fincas con la nota "denegada por ser nula
la sub-hipoteca constituída por el Banco, el cual no tiene faculta-

des para sustraer una parte de la masa total de los bienes hipoteca-
dos á su favor, á la garantía general que todos ellos prestan, por mi-
nisterio de la ley, á la masa total de las cédulas hipotecarias emitidas
ó que se emitan en su representación, sub-hipotecando especialmente
una parte de aquéllas en garantía de un determinado número de
cédulas, acto que es contrario á la naturaleza de las instituciones
bancarias de crédito territorial y á lo prescrito en los artículos 206
y 208 del Código de Comercio, y no pareciendo subsanable el ex-
presado defecto, no es admisible la anotación preventiva''; que el
Banco interpuso recurso que llegó á la sección de los Registros, re-
cayendo la resolución de 15 de Enero de 1898, fijando clara y con-
cretamente la doctrina legal, aplicable á las cédulas hipotecarias emi-
tidas en representación de préstamos hipotecarios á plazos largos,
otorgados por sociedades de crédito territorial que, para garantir las
cinco emisiones, constituyó el Banco sub-hipotecas á favor de los
tenedores de cédulas sobre varias hipotecas á su favor, según la re-
lación que expresan y fijan las escrituras de 12 de Enero, 26 de
Marzo y 25 de Noviembre de 1895 y 2 de Enero de 1896, ante Don
Mauricio Guerra, que se detallan en la demanda, así como los Re-
gistros de la Propiedad á que corresponden; que de las sub-hipotecas
reseñadas han sido canceladas en el Registro algunas, por adjudica-
ción y por inutilización de cédulas hechas con arreglo á los estatu-
tos y por sentencia dictada por el Tribunal de Distrito de Ponce,
y son enumeradas en la demanda como sigue: la 3 en la tercera adi-
cional, la primera en la tercera adicional, la 5 en la cuarta, la 1
en la cuarta adicional, las 3, 4, 7, 8, 10, 11, 16, 17, 21, 23, 24, 26, 28,
29, 30, 36, 37, 38, 39, 46 y 50 de la quinta, no llegando á inscribirse
las números 18, 19 y 20 de la quinta, por corresponder al Registro
de Ponce, cuyo Registrador se opuso á ello, no estando canceladas
las restantes sub-hipotecas que expresa, y son de la tercera emisión
las 2 y 5; en la cuarta las 1 y 4; en la quinta las 1, 2, 5, 14, 32,
33, 34, 43, 48 y 53, á pesar de haberse otorgado cartas de pago
de las respectivas hipotecas, por haberse negado los Registradores
de la Propiedad, fundados en las razones expuestas en este escrito;
que las restantes sub-hipotecas corresponden á hipotecas vigentes,
si bien algunas están en trámites de ejecución por falta de pago,
y pudieran, por tal motivo, encontrarse canceladas por venta judi-
cial cuando termine este declarativo, en cuyo caso no sería nece-
saria la declaración de nulidad de la inscripción; siendo el derecho
alegado los artículos 21, 23, 117, párrafo 2, 199, 206 y 208 del Có-
digo de Comercio, el 39 del Reglamento Mercantil, los 334 y 336 del

Código Civil, los 1 y 3 de la base 3a. de la constitución del Banco, los 10 y 11 de dicha Acta de Constitución, la resolución de la Dirección de los Registros de Ultramar de 15 de Enero de 1898, los artículos 33 y 79 de la Ley Hipotecaria y los 82 y 459 de la Ley de Enjuiciamiento Civil:

5.—*Resultando*: que admitida la demanda y citados por edictos los demandados, se personó en autos D. Julián E. Blanco y Sosa, teniéndosele por parte, presentando escrito el defensor del Banco, pidiendo se le entregara la copia de la demanda y originales, los documentos acompañados, con arreglo al artículo 319 de la Ley de Enjuiciamiento Civil, á todo lo que se accedió.

6.—*Resultando*: que contestó Blanco la demanda alegando, además, excepciones dilatorias y reconvención, pidiendo se declarare no puede prosperar la demanda por los vicios y defectos que contiene, y si bien, al contestar, manifestó carecía de competencia este Tribunal, siendo nulo lo actuado, no sostuvo esa incompetencia en el acto de la vista, ni alegó sobre ella lo más mínimo, solicitando, en segundo lugar, se desestime en todas sus partes la demanda con las costas, y en tercero, que de acceder á ella, se admita la reconvención que establece para que devuelva á los tenedores de cédulas el importe y los cupones vencidos con las primas que les correspondan, ó en defecto, se haga constar por nota en el Registro ó inscripción la propiedad de las hipotecas del Banco gravadas en seguridad de las cédulas en favor de los tenedores de éstas, con las costas al actor y los daños y perjuicios que á los demandados se originen.

7.—*Resultando*: que sentó como hechos en la primera solución: que en la demanda no se expresa claramente las personas contra quienes se propone, expresando en su otro sí son personas desconocidas, ignorándose su domicilio, y en el segundo, confiesa que por ello no acompaña las copias de la demanda y documentos, reservándose hacerlo cuando se presenten algunos de los demandados; siendo el derecho relativo á los artículos 62, 269, 271, 272, 274, 277, 279, 314, 315, 317, 325 y 532 de la Ley de Enjuiciamiento Civil, 170 de la Ley Hipotecaria, 70, 72 y 75 de la Orden General, número 118 de 1899, los hechos de la segunda solución: la escritura de 21 de Julio de 1894, por la que se constituyó el Banco Territorial y Agrícola, utilizando el art. 117 del Código de Comercio: que, según la base 12 de esa escritura, se expresa el capital y forma de

abono en la 13; siendo las operaciones, con preferencia, según la tercera, fomentar la agricultura con préstamo á largo plazo, adquirir créditos hipotecarios y emitir cédulas hipotecarias y obligaciones al portador, conforme á los artículos 199 y 176 del Código de Comercio, habiendo empezado el Banco á funcionar en 1894, y efectuado varios préstamos hipotecarios, en 12 de Enero de 1895, en representación de sus hipotecas y conforme á los artículos del Código de Comercio y de sus estatutos, hizo su primera emisión de cédulas hipotecarias al portador, formalizándose la escritura pública indicada, incluyendo la cláusula tercera por la que se obligó á satisfacer las cédulas á sus tenedores á los treinta días del sorteo en sus propias oficinas, por la cuarta, los cupones en los días señalados para su pago; por la séptima, que si á la garantía del pago quedaba por la ley obligado con preferencia á sus demás responsabilidades de otra naturaleza el capital del Banco, sus fondos de reserva y todos sus demás bienes para mayor seguridad de la emisión, hipotecaba especialmente al pago los créditos hipotecarios que la escritura menciona, y con la advertencia que esa escritura no perjudicaría á tercero, si no se inscribía en los Registros de la Propiedad correspondientes; que transcurridos dos meses, hechos nuevos préstamos, hizo el Banco su segunda emisión en Marzo 20 de 1898, inscribiéndose, como la anterior en los Registros, excepto en el de Mayagüez, por algunos defectos subsanables; ocho meses después, en 25 de Noviembre de 1895, con nuevos préstamos hipotecarios, hizo tercera emisión inscribiéndose en los Registros, é igual sucedió en 2 de Enero de 1896 para convertir la nueva moneda oficial que se puso en circulación y para garantir el aumento por diferencia de moneda; y con la 4a. emisión de 25 de Noviembre de 1895, contestando todos esos hechos de las escrituras por el actor presentadas.'' Que en Julio de 1895, comenzaron las medidas desacertadas, entre las que descuella la compra de la casa, derrochándose sumas considerables, $52,419; efectuándose la quinta emisión con las mismas obligaciones, formalidades y requisitos que las anteriores, sin haberse puesto dificultad en los Registros donde se llevó; denegándola el de Ponce, reproduciendo la nota denegatoria del Registrador referida en el 4to. resultando; que interpuesto recurso gubernativo de esa negativa del Registrador de la Propiedad de Ponce, el Juez la sostuvo, siendo revocada por el Presidente de la Audiencia y apelada por el Registrador, recayó la resolución de la Dirección General de los Registros de 15 de Enero de 1898, contra la que procedía la demanda contenciosa ante el Concejo de Estado;

siendo el derecho los artículos 21, 23, 117, 199, 204, 206 á 208 del Código de Comercio, 39 del Reglamento Mercantil, bases 1a. y 3a. de la escritura social, artículos 2, 3, 23 á 25, 82, 146, 152 y 153 de la Ley Hipotecaria, y 182 á 184 del Reglamento de la misma.

8.—*Resultando:* que los hechos de la tercera resolución ó reconvención son los mismos consignados en la contestación que reproduce: y el derecho, el contenido de las escrituras de emisión de cédulas hipotecarias; que formalizando el cuasi-contrato con el Banco y los tenedores de cédulas, no está al arbitrio de una sola de las partes variar las condiciones en perjuicio de la otra, y si retira las hipotecas con que garantizó sus cédulas debe devolver su importe con los cupones y primas; y el Banco sostiene que los tenedores de cédulas son los verdaderos dueños de las hipotecas gravadas á su favor, nada más justo y procedente que se consolide y afiance á ellos ó de cancelarse quedarían en peligro los derechos de los tenedores de cédulas en lo que el Banco devolvía su importe; que la temeridad, oponiéndose á la revocación, se pena con las costas y los perjuicios que cause.

9.—*Resultando:* que conferido traslado al Banco de la reconvención, pide se declare con lugar la excepción de falta de personalidad del demandado y todo caso sin lugar y con las costas la reconvención, sentando por hechos de la dilatoria: que se promueve en juicio contra los tenedores de cédulas hipotecarias al portador de las cinco emisiones, haciéndose el emplazamiento por edictos por no constar el domicilio de los que debían ser citados; que Blanco defiende en este juicio sus derechos y los de todos sus compañeros en la comunidad, según dice su defensor al personarse, sin acreditar que es tenedor de cédulas hipotecarias, ni que represente á los demás tenedores de cédulas; que al contestar la demanda formula reconvención, siendo el derecho los artículos 532 y 534 de la Ley de Enjuiciamiento Civil y que la prueba de las excepciones dilatorias se practicará previamente en el juicio oral, informando después los defensores, resolviéndose la cuestión incidental; y en cuanto á la reconvención en el fondo, reproduce los de la demanda que refiere y los de derecho, agregando que es imposible acceder á ella, por responder al principio errores que dió motivo á la demanda de nulidad; y que de prosperar se cambiaría por completo la naturaleza de las cédulas hipotecarias, por no ser títulos al portador que refiere el artículo 82 de la Ley Hipotecaria, mientras las cédulas de los Bancos no pueden

### El Banco Territorial y Agrícola
#### v. Los Tenedores de Cédulas Hipotecarias.

9

ser emitidas más que por Bancos Hipotecarias según el Código de Comercio, y cita la base 10 de la continuación del Banco.

10.—*Resultando*: que requerido, á instancias del demandado, el defensor del Banco produjo primero la escritura de Constitución del Banco Territorial y Agrícola de Puerto Rico, constando en la base tercera las operaciones á que se dedicará entre ellas prestar con hipotecas sobre fincas rústicas y urbanas y emitir cédulas hipotecarias y obligaciones al portador, conforme á los artículos 199 y 176 del Código de Comercio; la base 8a. que emitirá en representación de los préstamos hipotecarios que realizó á largos plazos, obligaciones con interés que tendrán el nombre de cédulas hipotecarias, con la garantía de la masa de los bienes hipotecados á favor del Banco, del capital social y del fondo de reserva, pudiendo, según la 8a. emitir esas cédulas cada vez que verifique un préstamo hipotecario á largo plazo, por un valor igual al del préstamo, pero siempre de modo que la totalidad de las emisiones representen una suma igual al importe de las hipotecas vigentes, constituídas á favor del Banco en garantía de aquellos préstamos; por la 11a. cada reembolso anual de cédulas, deberá comprender el número necesario para que el montante de las que queden en circulación no exceda al de los préstamos hipotecarios á largos plazos, y si hicieren reembolsos anticipados por cuenta de dichos préstamos, las sumas reembolsadas deberán invertirse inmediatamente en otra hipoteca de la misma clase á menos que el Banco retire de la circulación cédulas hipotecarias por valor igual á aquellas sumas; según la escritura de 12 de Enero de 1895, de la primera emisión de cédulas hipotecarias al portador, la de 25 de Noviembre de 1895 de la 4a. Emisión, en representación de préstamos hipotecarios que refiere; dos escrituras de 2 de Enero de 1896, la una, cumpliendo una acuerdo del Banco, respecto á las cédulas de la 4a. emisión por el cange de moneda mejicana por la provinvial española, á fin de amortizar el valor de las cédulas con el de la nueva moneda á la otra de igual fecha á la mencionada por la misma razón ó motivo para la tercera emisión; y la escritura de 1 de Septiembre de 1896 de la 5a. emisión de las cédulas hipotecarias. Cada una de esas escrituras es, por representación de los créditos hipotecarios que ellas relacionan, conteniendo además las mismas condiciones relacionadas en los Resultandos 1 y 2 sin haber concurrido al otorgamiento de las sub-hipotecas los deudores hipotecarios, ni haberse acreditado se les notificara ó hiciera saber, constando en todas ellas que las subsistencias de las sub-hipotecas esta-

blecidas queda pendiente de solución de las respectivas hipotecas sobre que se han constituído sin comparecer en ellas los deudores hipotecarios ni constar habérseles notificado la sub-hipoteca, agregándose sólo en la de 12 de Enero de 1895, después de las palabras "mientras no se resuelvan las siguientes" hasta que tenga efecto la íntegra amortización de las cédulas y sus cupones"; pero en ésta, en la cláusula 5a. dice "en el evento de que se anticipe el pago total ó parcial de los préstamos descritos, el Banco se constituye á recoger ó inutilizar inmediatamente, satisfaciendo su importe, el número de cédulas equivalentes al de pagos, conservando esas sumas en depósito, interín lo verifica, con el fin de destinarlas á ese fin exclusivamente", cláusula que consta en todas las demás y en los 1 y 2 Resultandos aquí mencionados.

11.—*Resultando*: que en el acto del juicio oral reprodujo el demandado la dilatoria de defecto legal en el modo de proponer la demanda, y el demandante la de falta de personalidad de los demandados, que formuló al contestar la reconvención; las que fueron declaradas sin lugar por mayoría, disintiendo en aquella el Juez Asociado Mr. Frank H. Richmond y en la última el Juez Asociado Don José Tous Soto, por lo que informaron los defensores de las partes lo que estimaron conveniente á sus respectivos derechos, respecto al fondo.

Siendo Ponente el Juez Presidente Don Juan Morera Martínez.

1.—*Considerando*: que dirigida la demanda contra los tenedores de cédulas hipotecarias al portador, emitidas por el Banco, le era imposible á éste designar las personas contra quienes la proponía, por serles desconocidas y menos podía utilizar el derecho que el número 1 del Art. 496 de la Ley de Enjuiciamiento Civil concede, por lo que pudo pedir se citara por edictos y emplazara en esa forma, como lo hace en su súplica, á los que son tenedores de cédulas hipotecarias del Banco demandante, de la primera, segunda, tercera, cuarta y quinta emisión sobre los créditos hipotecarios respectivos que en la demanda se enumeran, según es práctica constante y la ley determina en sus casos, entre otros, el número segundo del art. 393 de la Ley Hipotecaria y las sentencias del Supremo de 5 de Mayo de 1890 y 4 de Junio de 1891, y por ello agrega, no acompaña las copias de la demanda y documentos, reservándose hacerlo cuando se presenten los demandados.

2.—*Considerando*: que el mismo demandado, al personarse ha re-

conocido ese derecho del actor á pedir la citación y emplazamiento en la forma referida, no existiendo por lo tanto el defecto legal, que no cabe fundarlo, además de no haber entregado las copias de la demanda y documentos, por no ser ese requisito esencial de la demanda, y sí un extrínseco ó accidental, todos los artículos, 523 y número 6 del 532 de la Ley de Enjuiciamiento Civil; y habiendo cumplido el demandante con el primero de dichos artículos, no hay defecto legal por esas razones, y ser válida y eficaz la citación y emplazamiento de los demandados en la única forma posible, no pudiendo prosperar la alegación referente á las copias porque al personarse el demandado presentó escrito el Banco pidiendo se le entregara la de la demanda y originales los documentos acompañados, por estar éstos comprendidos dentro del artículo 519 de la Ley de Enjuiciamiento Civil.

3.—*Considerando*: que la falta de personalidad del demandado no es procedente por haberla reconocido el actor al pedir se le entregaran dichas copias y documentos originales de la demanda, en vez de exigir acreditara el carácter ó representación que después ha pretendido, y no habiendo comprobado carezca del pleno ejercicio de los derechos civiles, ni del carácter ó representación propia, por los medios de prueba que el demandante pudo solicitar al formular la que, á su debido tiempo, creyó conveniente y estimara suficiente para que la excepción propuesta pudiera prosperar.

4.—*Considerando*: que al manifestar que el cuerpo de su escrito de contestación al defensor Don Julián E. Blanco "que en este juicio defiende no solo sus derechos personales, sino los de todos sus compañeros de comunidad que se hallan en el mismo caso", eso no demuestra se ha personado en nombre de ellos, ni aparece en el encabezamiento de ese escrito, ni en los anteriores presentados, ni en este juicio se ha tenido por parte por los demás demandados para que le pueda exigir compruebe esa representación y pueda tener esa personalidad.

5.—*Considerando*: que la falta de personalidad en el demandado consiste en que éste no tenga ese carácter, lo cual afecta á la forma y no á la esencia del pleito, ó sea á la calidad con que el demandado venga al juicio y no á la cuestión que es objeto del mismo, la que siempre debería resolverse, dada la rebeldía de todos los demandados contra quienes el juicio se ha seguido á instancia del actor.

6.—*Considerando*: que los Bancos Territoriales tienen por objeto

facilitar al propietario los recursos que necesite por un módico interés y ponerle en condiciones de que poco á poco vaya amortizando su deuda, y para ello el propietario recurre al Banco, con los documentos que acreditan la garantía que ofrece, la que si es suficiente, se accede, entregándole la cantidad, quedando la finca ó fincas hipotecadas á responder del pago de las anualidades y los intereses.

7.—*Considerando*: que dichos Bancos para cumplir su misión y continuar en su préstamo, emiten cédulas hipotecarias al portador que representan un valor que se amortiza en la forma que los Estatutos del Banco y los artículos de la Sección undécima, Título 1., Libro II del Código de Comercio ordenan, hallándose asegurado el cumplimiento de ese compromiso con las propiedades hipotecarias por él Banco, y además, con el capital social, por lo que los poseen son acreedores del Banco y prestamistas de los propietarios, con la ventaja de no tener para nada que dirigirse á ellos, pues la sociedad bancaria es la que les responde de sus derechos y cuida de hacer efectivos los créditos, siendo las cédulas el verdadero instrumento de crédito territorial.

8.—*Considerando*: que así se deduce de las escrituras todas de emisión de las cédulas hipotecarias, las que contienen que la subsistencia de las hipotecas constituídas por el Director del Banco, sin asistencia de los deudores hipotecarios, y sin que conste se les hizo saber á éstos, queda pendiente de la resolución de las hipotecas dadas en garantía por la emisión que refieren, agregando en ellas, que en el evento de que se anticipe por sus deudores el pago total ó parcial de los préstamos hipotecarios descritos, se constituye el Banco á recoger ó inutilizar las cédulas, satisfaciendo su importe, el número de créditos equivalentes al montante de esos pagos anticipados, conservando esas sumas en depósito interín lo verifica, corroborando esas manifestaciones que están de acuerdo con la escritura de constitución social del Banco, que este sólo es el que puede y debe cancelar esos préstamos, dada la base undécima de dicha escritura social.

9.—*Considerando*: que nadie puede ir contra sus propios actos, y que los pactos, derechos y obligaciones deben cumplirse sin excusa ni pretexto alguno, porque su validez y cumplimiento no pueden dejarse al arbitrio de uno de los contratantes.

10.—*Considerando*: que no existe nulidad, ni procede la de las

inscripciones que se piden, por no constar vicio alguno que invalide los contratos con arreglo á las leyes, porque han transcurrido los cuatro años que el artículo 1208 del Código Civil determina para poder ejercitar esa acción, pues otorgadas esas escrituras en 1895 y en 1896, siendo la última de primero de Septiembre de ese último año, y la demanda de tres de Mayo de mil novecientos dos, ha transcurrido, con exceso, el término legal por la ley concedido para ejercitarla.

11.—*Considerando*: que con el cobro de la hipoteca por el acreedor hipotecario queda cancelada la sub-hipoteca, toda vez que su existencia no depende de la voluntad del sub-hipotecario, sino que teniendo una vida precaria dependiente de la hipoteca, claro es que en el instante que fenece tiene que quedar caducada, porque, según la exposición de motivos de la Ley Hipotecaria de la Península, al explicar el precepto del párrafo 8o. del art. 107 que es idéntico al que en nuestra Ley existe: "no está en las facultades del acreedor primitivo dar al sub-hipotecario un derecho más extenso que el suyo, de la cosa hipotecada.

12.—*Considerando*: que de admitir lo contrario á ese razonamiento, acontecería que un acto ajeno al dueño de la cosa hipotecada, vendría á hacer más grave su situación, y que la hipoteca constituída sobre otra hipoteca, se convertiría en una hipoteca constituída directa ó inmediatamente sobre una propiedad inmueble, en vez de serlo sobre un derecho, convenciendo de ello los artículos 144 y 152 de la Ley Hipotecaria y el 137 número cuarto del Reglamento.

13.—*Considerando*: que siendo la reconvención establecida subsidiaria, ó sea para el caso que no se rechace la demanda, se condene al Banco devuelva á los tenedores de cédulas el importe de éstas, sus cupones vencidos y las primas, ó se haga constar en el Registro de la Propiedad que las hipotecas gravadas en seguridad de las cédulas corresponden exclusivamente á los tenedores de éstas, no cabe otra resolución que desestimarla, dado que la demanda no puede prosperar.

14.—*Considerando*: que las costas no deben imponerse al Banco por desestimarse sus pretensiones.

Vistas las disposiciones legales citadas, y el número 10 del art. 21 del Código de Comercio.

*Fallamos*: que debemos declarar y declaramos sin lugar la de

manda promovida por el Banco Territorial y Agrícola contra los tenedores de cédulas hipotecarias por dicho Banco emitidas en sus cinco primeras emisiones que la demanda refiere, y sin lugar la reconvención contra el Banco establecida y las excepciones formuladas por las partes, con las costas al demandante.

## La opinión del Juez Tous Soto, es como sigue:

### OPINIÓN DEL JUEZ ASOCIADO DON JOSÉ TOUS SOTO.

El Juez Asociado que suscribe, consigna como fundamentos de su opinión contraria á la desestimación de la excepción dilatoria de falta de personalidad en el demandado Don Julián E. Blanco para formular la demanda reconvencional, que el Señor Blanco no ha justificado ni al interponer su demanda reconvencional, ni en el período probatorio, que sea tenedor de cédulas hipotecarias del Banco Territorial y Agrícola correspondientes á las emisiones de que se trata en este pleito. La circunstancia de que la representación del Banco haya presentado la copia de su demanda para ser entregada al Sr. Blanco, al tener noticias del apersonamiento de éste como uno de los demandados citados por edictos, no arguye reconocimiento por parte del actor de la personalidad invocada por el compareciente, significando tan sólo el cumplimiento de una formalidad requerida por la ley procesal.

Respecto al fondo del asunto, (cuya resolución es ineludible aún en el caso de que la excepción del Banco hubiera prosperado) desea el exponente consignar que ha tenido en cuenta para desestimar esta demanda, además de las razones manifestadas en la sentencia, las consignadas en los siguientes Considerandos:

1.—*Considerando*: que el artículo 208 del Código de Comercio establece que las cédulas hipotecarias tendrán como garantía *especial* los créditos y préstamos á favor del Banco ó Compañía que las haya emitido y en cuya representación fueren creadas, *quedando afectos especial y singularmente* á su pago esos mismos préstamos y créditos, de cuyo precepto se desprende, con toda claridad, que por Ministerio de la ley, y sin necesidad de que las hipotecas constituidas á favor de un Banco Territorial se sub-hipotequen para garantizar las cédulas emitidas en representación de dichas hipotecas pertenecientes al Banco, quedan éstas afectas al pago de dichas cédulas con sólo llenarse el requisito de hacerse constar en el Registro Mercantil, como exige el Artículo 21 en su número 10 la serie y número de los títulos, su interés, réditos, amortiza-

ción, prima, cantidad total de la emisión y las hipotecas que se *afecten al pago de dicha emisión,* debiendo hacerse la inscripción mediante la presentación de actas de emisión de las cédulas con expresión de las hipotecas que se afectan y de las escrituras de constitución de éstas, sin que se haga necesaria la presentación de la escritura de sub-hipoteca de las hipotecas afectadas al pago de las cédulas emitidas.

(Art. 23, párrafo 3, del Código de Comercio.)

2.—*Considerando*: que de los artículos citados se deduce tanbién que no son los tenedores de cédulas hipotecarias los dueños de las hipotecas afectas al pago de aquéllas, puesto que el Banco debe afectar determinadas hipotecas al pago de la determinada emisión de cédulas, lo que demuestra que es dueño de la hipoteca que dá en garantía, ni tampoco que la masa total de las hipotecas del Banco responda en todas las cédulas hipotecarias, cualquiera que sea la emisión, por la misma razón expuesta y, además, porque entonces no existiría la garantía especial y singular de las hipotecas mencionadas en el Registro deben prestar á cada emisión determinada.

3.—*Considerando*: por tanto, que si bien el Banco pudo prescindir de la constitución de las hipotecas, cuya nulidad se solicita en este pleito, no son, sin embargo, nulas con arreglo á derecho, porque no puede privarse al Banco de ofrecer á los tenedores de cédulas, además de la garantía de carácter mercantil que el Código de Comercio les concede, sin necesidad de inscripción en el Registro de la Propiedad, otra garantía propiamente hipotecaria, revistiendo la seguridad concedida por ministerio de la ley y de la forma legal de sub-hipotecas ya afectadas por ministerio de la ley, sin necesidad de inscripción en dicho Registro.

4.—*Considerando*: que siendo cierto que la constitución de dichas sub-hipotecas y consiguiente inscripción de las mismas en el Registro de la Propiedad, no suma ninguna nueva garantía á favor de los tenedores de cédulas hipotecarias, no sería esta circunstancia un motivo para anular dichas escrituras ó inscripciones, no siendo tampoco exacto que las sub-hipotecas no signifiquen una garantía más para los tenedores de cédulas, toda vez que de esta suerte no puede el Banco enagenar los créditos hipotecarios, en perjuicio de los tenedores de las cédulas representativas de dichos créditos, ni éstas cancelarse sin que por lo menos el Banco presente en el Registro un número de cédulas canceladas de la emisión de que se trata equi-

valente al valor del crédito que pretende cancelarse, todo lo que podría ocurrir sin la constitución de las hipotecas.

Por lo expuesto, es mi opinión: primero; que debe declararse con lugar la excepción de falta de personalidad en el demandado y reconveniente; segundo: sin lugar á la excepción de defecto legal en el modo de proponer la demanda; y tercero: sin lugar la demanda y la reconvención.

San Juan, Mayo de 1904. José Tous Soto.

## El voto del Sr. Richmond, es como sigue:

Me alegro de no tener que añadir nada á la fuerza y claridad de la sentencia justa de mi ilustrado compañero en lo que toca á la cuestión principal.

Sólo puedo decir que nada encuentro en la constitución del Banco Territorial, ni en el Código de Comercio, ni en la Ley Hipotecaria, que pueda producir la nulidad de las sub-hipotecas de autos. Extrictamente el acto de constituir las varias sub-hipotecas otorgadas por el gerente del Banco, no constituye un contrato bilateral por no estar presente más que de una parte, estando entonces el contrato unilateral para la vez. Estando dentro de las facultades del Banco el otorgamiento de las sub-hipotecas, como he indicado existe una causa para sostener la obligación é impedir la única parte presente resolverla y rescindirla cuando le plazca.

No encuentro en autos ninguna de las cédulas emitidas y no puedo saber si contenían éstas alguna cláusula referente á la sub-hipoteca de los créditos principales que pudiera haber facilitado la aceptación de aquéllas por parte del público. en vista de la garantía adicional ofrecida por la sub-hipoteca.

No obstante, creo firmemente que la existencia de tal sub-hipoteca inspiró más confianza, dando por tanto mayor circulación á las cédulas y la anulación y cancelación de la sub-hipoteca (que no es más que una notificación á terceros de que los tenedores de cédulas de una emisión indicada, tienen derecho preferente al dinero que pueda ingresar del cobro de las hipotecas) perjudicaría probablemente, ó al menos, podría perjudicar á los tenedores.

En este sentido es de aplicar el precepto "nadie puede ir contra sus propios actos" (lo que se llama en la jurisprudencia Americana "stoppel") y una vez prestada la garantía adicional, el Banco no puede retirarla.

Con respecto á la excepción de defecto legal en el modo de proponer

la demanda, no puede menos de desaprobar el concepto de trámite legal de que precede una demanda tan extraña como la presente.

Los artículos de la Ley de Enjuiciamiento Civil que tratan del emplazamiento en juicio, exigen la exposición del nombre, apellido y residencia del demandado y demandados. Esa es la regla general y muy sabia. En ciertos casos, por motivos de conveniencia y sin perjuicio de nadie, la ley permite que se cite á personas conocidas en la forma vaga empleada en este pleito, personas no conocidas, llamadas á sucesiones, por ejemplo, y citación en los expedientes de dominio bajo la ley hipotecaria.

No obstante, tales citaciones requieren siempre, para ser válidas y legales, la sanción de una especial precisión en la ley, faltando tal autorización, tiene que regir la regla general, y no creo aplicables al caso presente las sentencias del Tribunal Supremo de España, citadas en la sentencia por el Hon. Juez Ponente, por encontrarse en tales casos demostrada la identidad indicada por medio de sus nombre y apellidos. Si hubiera existido en algún tiempo una sociedad anónima con el nombre de tenedores de cédulas, si tales tenedores se hubieran reunido en alguna época voluntaria, aunque informalmente y sin cumplir los requisitos del Código de Comercio, se encontraría excusa á la forma en que la demanda está propuesta, pero en la situación que existían, este pleito asume el aspecto de quitar á espaldas de los tenedores, una garantía sustancial sin darles el conocimiento y significación que procedían y sin la necesaria sanción especial para hacerlo de tal manera.

Con respecto á la excepción de falta de personalidad de la parte que compareció á contestar y oponerse á la demanda, creo legalmente suficiente á la forma en que la parte se personó en el juicio, para darle personalidad bastante para litigar en una demanda de la índole de la presente, propuesta en forma tan especial; y su posesión actual de una ó más cédulas era materia de prueba en el juicio pleno y no importaba antes de considerarse su derecho á lo que pidió en la súplica de la reconvención.

Lo que antecede, constituye los fundamentos legales que tuve para disentir de mis compañeros al no desestimar la excepción de defecto legal en el modo de proponer la demanda y para desestimar le excepción de falta de personalidad por parte del que se personó voluntariamente á oponerse á la demanda.—San Juan, P. R., Mayo 25, 1904.—Frank H. Richmond, Juez Asociado.''

Contra estas opiniones el Banco, al discutir la cuestión principal, insiste en la nota del Registrador de la Propiedad de Ponce, rehusando la inscripción de la sub-hipoteca que le fuera presentada y en la subsiguiente confirmación de la acción tomada por el mismo por la Dirección General de los Registros.

A pesar de que la teoría de que la hipoteca carecía de los requisitos necesarios para su inscripción, esto no dá derecho alguno al Banco para tratar de anular sus propios actos. Pudieron haberse hecho diligencias más ó menos adecuadas para anular la inscripción, por cualquier tenedor de otra emisión, suponiendo que la hipoteca que trataba de anularse no fuera á su favor (del tenedor).

Creemos que los tenedores, según la ley, son acreedores preferentes del Banco con derecho á proceder, si sus reclamaciones no son satisfechas, contra cualquier y todos los créditos hipotecarios que el Banco tenga, y si fuese necesario, estableciendo acción ante una Corte. Es cierto, según el Registrador de Ponce, que el Banco no tiene poder, con el hecho de sub-hipotecar especialmente una parte de las propiedades hipotecadas á sustraer una parte de la masa social de los créditos á la garantía general que todos ellos prestan, pero nosotros sostenemos que la institución de la hipoteca no tuvo ese efecto.

Cada persona que tenga una cédula debe tenerla, conociendo la ley y la naturaleza del Banco contra el cual tiene la cédula, el hecho que una inscripción se haga á favor de un tenedor de acuerdo con determinada emisión no le dá á dicho tenedor superiores derechos á los que tiene un tenedor de cualquiera otra emisión. Puesto que el fin de la sub-hipoteca es ese, creemos que es ineficaz é inútil según la ley que gobierna este caso.

Sin embargo, no estamos preparados para decir que la inscripción no pueda tener otro efecto. Si, por ejemplo, el Banco tomara y pagara las cédulas de las emisiones an-

teriores, dejando únicamente la quinta, creemos que la sub-hipoteca constituida en favor de los tenedores produciría efectos contra todo el mundo. Es innecesario para nosotros averiguar qué otros efectos podían tener las inscripciones. Ellas no son nulas y según se encuentran son una garantía más para los tenedores.

Partiendo del hecho de que los tenedores son acreedores del Banco, debe seguirse que los deudores hipotecarios no están obligados directamente á ellos, y el proceder del Banco al instituir las sub-hipotecas no puede perjudicar las operaciones que están autorizadas, según la Ley, ya en la extinción de las hipotecas ó sobre el pago de cédulas. De este modo estamos de acuerdo con el quinto, sexto, séptimo, octavo, noveno, undécimo, duodécimo y décimo tercero Considerandos de la opinión de la Corte inferior y con las decisiones alcanzadas sobre la cuestión principal por los otros dos Jueces, especialmente, con la del Sr. Tous Soto.

También estamos de acuerdo con dicho Juez Tous Soto en que la Corte cometió error en desestimar la excepción previa de falta de capacidad personal del demandado Julián E. Blanco. Este nunca probó que era un tenedor y creemos que el Banco á su debido tiempo y en forma adecuada se opuso por su falta de personalidad. El Banco no tenía obligación de hacerle probar su derecho á entablar acción alguna antes de darle una copia de la demanda.

Por las razones alegadas la sentencia apelada debe confirmarse menos en la parte que declara sin lugar la excepción de falta de personalidad en Don Julián E. Blanco, debiendo entenderse las costas de ambas instancias sin especial condenación.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández y MacLeary.